**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JESSICA DAWN BROWN,**

      **Plaintiff,**

                               **Civil Action 2:20-cv-424**
                               **Magistrate Judge Elizabeth P. Deavers**

  **v.**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Jessica Dawn Brown, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). With the consent of the parties (ECF Nos. 6, 7), this matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9). No reply memorandum has been filed. For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the decision of the Commissioner is **AFFIRMED.**

## I.      BACKGROUND

Plaintiff filed her application for SSI on March 18, 2014, alleging that she has been disabled since October 20, 2013, due to a back injury, chronic severe pain, anxiety and depression. (R. at 283-89, 317.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").

A hearing was scheduled for January 19, 2017, and Plaintiff, represented by counsel, appeared and testified. A vocational expert also testified. On March 27, 2017, the ALJ issued an unfavorable decision. (R. at 114-31.) Plaintiff requested review of and, on December 31, 2017, the Appeals Council vacated the decision and remanded this case. The Appeals Council instructed the ALJ as follows:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 416.920b).

(R. at 20.)

ALJ Timothy Keller held a brief hearing on June 19, 2018. (R. at 70-78.) On December 6, 2018, ALJ Keller held a supplemental hearing. Plaintiff, represented by counsel, again appeared and testified, as did a vocational expert. (R. at 47-69.) On December 19, 2018, the ALJ issued his decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17-46.) On November 22, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff timely commenced the instant action. (ECF No. 1.)

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff testified that, as of September 2016, she was no longer treating with her primary care physician, Dr. Ulrich "because treatment from Dr. Ulrich just wasn't working and it didn't feel like he was listening to me anymore." (R. at 73-74.) Plaintiff had begun seeing Dr.

2

Billingsley, another doctor in the same practice. (R. at 74.) Plaintiff had not had any physical treatment from another facility since 2016. (*Id.*) Plaintiff also testified that she had not received any mental health treatment since 2016, noting she stopped going to Allwell because "[she] just wasn't comfortable with the therapists that they had." (R. at 75.)

Plaintiff testified that, at the time of the December 2018 hearing, she was 5'9" and weighed 249 pounds. She described her weight as "typical" for her. (R. at 50.) She lives with her husband and son in a one level house with no stairs. (R. at 51.) She testified that she was last employed in 2004 at Donato's Pizza, working part-time. She stated that she only worked there for about three months. She testified that the job required her to lift between 20 and 25 pounds with "a lot of bending and stooping." She explained that she left that job when she became pregnant. (R. at 51-52.)

When asked by the ALJ about her medical issues, Plaintiff confirmed that she underwent back surgery in 2014 and she continues to have constant pain, numbness in her legs and occasional shooting pain "that will make [her] unable to stand or walk." (R. at 53-54.) Plaintiff testified that she falls "once in a while," approximately every couple of weeks. Plaintiff also testified that she has a cane and uses it because it was recommended by her doctor. (R. at 55.)

The ALJ asked about a notation in the record which stated that Plaintiff's exercise included remodeling. Plaintiff responded that her family is remodeling and she walks around the home giving her opinion. (*Id.*) In addition to back surgery, Plaintiff testified that she was receiving back injections. She stated that she takes muscle relaxers and pain medications. (R. at 56.)

3

Plaintiff estimated that she could stand or walk for approximately 5 minutes. She stated that her ability to sit was limited to 5-10 minutes before she needed to stand up and move around. (*Id.*)

Plaintiff also testified that she is a diabetic and had started taking insulin four months prior to the hearing. She explained that her diabetes is controlled with insulin. Plaintiff stated that she has "a little bit of neuropathy in [her] feet." (R. at 57.)

Plaintiff further testified regarding a sleep disorder which she described as an inability to fall asleep and stay asleep at night. She explained, however, that once she falls asleep, she has difficulty waking up. She also stated that her sleep is interrupted approximately 4 to 6 times per night and she felt "very groggy, very sluggish" in the morning. (R. at 58.)

With respect to issues of anxiety and depression, Plaintiff described her symptoms as panic attacks, episodes of crying, loss of motivation, and loss of interest in things that she used to enjoy doing. (R. at 59.) When asked why she did not go to mental health treatment for all of this time, she replied that she had never gotten along with any of the therapists in her town. (*Id.*) She did not find the counselors helpful. (R. at 60.) She has continued to take medication from her primary care physician. (*Id.*) She finds it difficult to be around unfamiliar people and does not leave home without a family member accompanying her. (R. at 61.) Plaintiff has never had a driver's license due to her phobia of driving. (R. at 61-62.) Plaintiff also described having difficulty maintaining concentration and suffering from memory loss. (R. at 64, 65.)

As of the time of the hearing, Plaintiff was taking several medications. These medications included Zoloft for depression; hydroxyzine for anti-itch and anxiety; hydrocodone and acetaminophen for pain; cyclobenzaprine, a muscle relaxer,; rosuvastatin calcium for cholesterol; losartan potassium for blood pressure; metformin and insulin for diabetes; and

4

mirtazapine as a sleep aid. She explained that Mirtazapine causes her to feel sluggish all day. (*Id.*)

When asked to describe a typical day, Plaintiff testified that she spends approximately 10 hours per day watching television and movies. (R. at 62.) She explained that she lies down when she is watching television. As to household chores, she described tidying up "where [she] can reach." Bending, kneeling, and standing in one place is "incredibly hard." (R. at 63.) Meal preparation is limited to frozen dinners that she can take out of the freezer and put in the oven. (*Id.*)

Plaintiff testified that she no longer makes crafts or sews because she lacks motivation. She explained that most days she does not leave her house unless she has to and never leaves by herself. When she does leave her house, it is usually to go to the pharmacy, grocery store, or to pick something up for dinner. (R. at 63-64.) When she goes to the grocery store, if it is more than to pick up something quick, she uses a motorized cart. (R. at 64.)

**B.    Vocational Expert Testimony**

The vocational expert ("VE") testified that Plaintiff's past relevant employment was as a cashier, classified as a light exertion, unskilled job. (R. at 66.) Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work but could perform 174,000 light, unskilled jobs in the national economy such as a mail clerk and office helper. (R. at 67.) The VE testified that these jobs could generally be performed half sitting and half standing, which accommodated Plaintiff's less-than-light residual functional capacity. (*Id.*) On examination by Plaintiff's counsel, the VE testified

5

that with certain additional limitations, Plaintiff would be unable to sustain full-time competitive employment.   (R. at 67-68.)

### III.   RELEVANT MEDICAL EVIDENCE

**A.   Stephen Ulrich, M.D.**

Plaintiff treated with Dr. Ulrich from August 2013 through September 2016.   (R. at 73-74, 388-403, 462-69, 484-514, 551-52, 568-79, 583-96.)

In a narrative report dated October 11, 2016, Dr. Ulrich concluded that Plaintiff had been disabled since May 2014, when she underwent spine surgery.   Dr. Ulrich stated that Plaintiff's chronic spine condition was likely to worsen with time and her anxiety and depression complicated recovery and future prospects of gainful employment in a competitive work environment.   (R. at 558-59.)

Dr. Ulrich also completed a physical residual functional capacity assessment.   (R. at 560-67.)   According to this assessment, Plaintiff could occasionally and frequently lift less than 10 pounds, must periodically alternate between sitting and standing to relieve pain or discomfort, had limitations in upper and lower extremities for pushing and/or pulling, including operation of hand and/or foot controls.   (R. at 561.)   According to Dr. Ulrich, Plaintiff could never balance, climb ramps, stairs, ladders, ropes, or scaffolds, never kneel, crouch, or crawl; but could occasionally stoop.   (R. at 562.)   Dr. Ulrich also determined that Plaintiff must avoid all exposure to extreme cold, extreme heat, moderate exposure to wetness and humidity, avoid concentrated exposure to noise, vibration, fumes, odors, dust, gasses, and poor ventilation and even moderate exposure to hazards including machinery and heights.   (R. at 564.)   Dr. Ulrich opined that Plaintiff's symtoms are related to her back disease and her morbid obesity is part of

6

the metabolic syndrome associated with abnormal weight gain. Further, he opined that the severity of Plaintiff's impairments was consistent with the physical evidence. (R. at 565.)

**B.      Mark Weaver, M.D. - consultative evaluation**

Dr. Weaver examined Plaintiff for disability purposes on August 18, 2014. Plaintiff relayed her history of injury to her lower back from a fall on the ice in 2006 and a reinjury in March 2014. Plaintiff described her pain as constant, dull, achy lower back pain with radicular right leg pain. She explained that since her surgery she has not had physical therapy and her only treatment at the time of this evaluation was the medication Tramadol. Plaintiff further advised that she used a TENS unit but did not use a cane, crutches or a walker. (R. at 453.) During his examination, Dr. Weaver noted constant involuntary spasm of Plaintiff's lumbar paravertebral muscles. (R. at 455.) An x-ray of the lumbar spine taken as part of this examination showed moderate L4-5 and L5-S1 disk interspace narrowing. (R. at 452.) Following examination, Dr. Weaver concluded that in view of Plaintiff's lower back and radicular right lower extremity problems, compounded by her weight (her BMI was 39.6), she would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, lifting, carrying, and traveling involving driving due to need to work foot pedals. Further, he opined that Plaintiff would probably be able to perform physical activities that involve handling objects, speaking hearing, following directions, and travel not involving driving. (R. at 456.)

## IV.   THE ADMINISTRATIVE DECISION

On December 24, 2018, the ALJ issued his decision. (R. at 20-40.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since March 18, 2014, the application date. (R. at 22.) The ALJ found that Plaintiff has the severe impairments of: degenerative disc and joint disease of the spine, status post-surgical intervention; diabetes mellitus; obesity; an anxiety disorder; and a depressive disorder. (R. at 23.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could stand/walk 4 hours out of an 8-hour workday. She could occasionally push/pull with the right leg. The claimant could occasionally climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. She could frequently balance; occasionally stoop and crouch; frequently kneel; and occasionally crawl. She should avoid exposure to moving machinery and unprotected heights. She would be precluded from commercial

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

8

driving. The claimant retains the ability to adapt to simple changes and avoid hazards in a setting without strict production quotas.

(R. at 26.)   In reaching this determination, ALJ Keller accorded "some weight" to the opinion of Plaintiff's treating physician, Dr. Ulrich.   ALJ Keller also assigned "significant, but not determinative weight" to the opinion of Dr. Mark Weaver, a consultative examiner who saw plaintiff one time.   (R. at 37.)   The ALJ also acknowledged that Plaintiff was "obese," but noted that "neither the claimant nor her attorney argued the claimant experienced any specific physical limitations resulting from her body habitus."   (R. at 28.)

Relying on the VE's testimony, the ALJ determined that even though Plaintiff is unable to perform her past relevant work, other jobs exist in the national economy that Plaintiff can perform.   (R. at 39-40.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act.   (R. at 40.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

10

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff identifies six separate contentions of error: "1) The ALJ's conclusion that there are jobs available in the national economy that Plaintiff can perform is not supported by substantial evidence; 2) The ALJ's RFC is not supported by substantial evidence; 3) The ALJ failed to give controlling weight to the opinion of Plaintiff's treating physician; 4) The ALJ's hypothetical questions to the vocational expert do not accurately portray Plaintiff's limitations; 5) The ALJ failed to consider the effects of Plaintiff's obesity and the side effects of her medications; 6) The ALJ failed to properly assess Plaintiff's credibility." (Doc. 12 at 1-2.) In terms of specific argument, however, Plaintiff asserts that the RFC is not supported by substantial evidence; the hypothetical question posed to the vocational expert was not accurate;

and the ALJ failed to give proper weight to the opinion of Dr. Ulrich, the treating physician. The Court will address each of Plaintiff's arguments in turn.

### A. The Treating Physician's Opinion

Plaintiff takes issue with the ALJ's evaluation of the opinion offered by Dr. Ulrich, her treating physician. The Court disagrees and finds that the ALJ's evaluation of this opinion is supported by substantial evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)

(indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 401527(e); *Bass v. Mc Mahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff contends that the ALJ failed to apply and evaluate the above factors in assessing Dr. Ulrich's opinion.   More specifically, Plaintiff contends that the ALJ's rejection of Dr. Ulrich's lifting and carrying limits ignores her well-documented back pain.   The Commissioner acknowledges that Dr. Ulrich "had served as Plaintiff's treating physician until around September 2016."   (ECF No. 15 at 3.)   Contrary to Plaintiff's view, however, the Commissioner contends that the ALJ offered a detailed discussion of Dr. Ulrich's opinion consistent with the regulations.

The ALJ addressed Dr. Ulrich's opinion as follows:

> The undersigned has considered the opinion of Dr. Ulrich, evidenced at Exhibit 20F.  He reported the claimant's symptoms made her less competitive for work; noted that she had been disabled since May 2014; and assessed she had a chronic condition likely to worsen with time.  He further reported her anxiety and depression complicated her recovery.  The undersigned finds the statements relating to the determination of disability unpersuasive, as they are reserved to the Commissioner.   Further, statements regarding mental health conditions and limitations are found less persuasive, as the physician was not notably a mental health specialist and the claimant herself admitted a positive response to conservatively prescribed medications (Exhibits 25F; 26F).   Additionally, regarding her condition being chronic in nature and likely to worsen over time, the undersigned finds the statement unpersuasive, as the undersigned considers only the claimant's conditions and symptoms via objective evidence during the time period under adjudication, not speculation and speculative limitations in the future.   In addition to his letter with the above discussed limits, Dr. Ulrich submitted a functional

capacity statement. The undersigned finds the statement no more than somewhat persuasive. The undersigned finds the lifting/carrying limits less persuasive, as the record does not support the claimant did not evidence any upper extremity condition and did not routinely report cervical spine pain/upper extremity radicular symptoms. The undersigned for the same reasons finds the push/pull limits in the upper extremities less persuasive. The undersigned finds the limits on sitting/standing somewhat persuasive, as the record supports ongoing radicular symptoms after spine surgery and the claimant maintained an obese body habitus. However, the claimant's self report that she could engage in routine household and remodeling for exercise (Exhibit 27F) as well as her ability to travel to Florida via car, suggests she is capable of greater sitting/standing/walking than he assessed. Additionally, the claimant did not evidence routine lower extremity instability. The undersigned finds the postural limitations somewhat persuasive, in that her spinal degeneration and radicular symptoms in the right leg, coupled with her obese body habitus and diabetic condition would result in some limits; however, her ability to shop, being observed without using an assistive device, ability to shop and engage in routine activities of daily living, supports greater ability in balancing, crouching, kneeling, and crawling. The undersigned finds her radicular symptoms would also support greater limits in climbing ramps and stairs. The undersigned finds the lack of limitation on reaching handling fingering and feeling persuasive and consistent with the lack of impairment to the upper extremities. The undersigned finds the lack of limitation in hearing and speaking consistent with the alleged lack of communication deficit or hearing/speaking impairment. The undersigned finds the environmental limits somewhat persuasive. The undersigned finds the record supports the claimant would be more limited in her exposure to hazards given her ongoing radicular symptoms and history of spinal degeneration coupled with her body habitus and diabetic condition. Additionally, due to her ongoing radicular symptoms, the undersigned finds the claimant would be more limited in driving. However, the undersigned finds the record does not support any respiratory condition/impairment supporting pulmonary irritants and finds such limits unpersuasive. The undersigned finds the atmospheric conditions, noise, and vibration unpersuasive, as the claimant was not in treatment for active rheumatoid arthritis and monofilament testing for diabetes as noted above was negative. Therefore, overall, the undersigned finds Dr. Ulrich's statement no more than somewhat persuasive and affords it overall no more than some weight.

(R. at 37.)

As the above excerpt confirms, the ALJ offered good reasons for discounting Dr. Ulrich's opinion. Further, contrary to Plaintiff's argument, the ALJ did not ignore her well-documented back pain, instead addressing it extensively elsewhere in his decision. (R. at 28-31.) Moreover, substantial evidence supports the ALJ's detailed analysis of Dr. Ulrich's opinion,

explaining both its consistency and inconsistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) (providing that "the more consistent a medical opinion is with the record as a whole, the more weight" it is given). For example, the record supports ALJ's explanation that Plaintiff's physical examinations did not reflect any upper extremity condition and that she did not routinely report cervical spine pain/upper extremity radicular symptoms. (*See*, *e.g.*, R. at 363-367, 368-373, 374-375, 388-403, 418-439, 440-451, 452, 453-461, 462-469, 470-483, 484-514, 523-550, 555-557, 568-579, 580-582, 583-596, 597-606, 607-637, 638-648, 649-660.) Similarly, the record supports the ALJ's observation that Plaintiff did not require an assistive device. (R. at 453.) The ALJ also reasonably considered Plaintiff's testimony that she is able to manage her own personal needs (R. at 65); shop (R. at 64); and does not experience problems with her hands or arms (*Id*.) when deciding what weight to assign to Dr. Ulrich's opinion. *See Dyer v. Social Sec. Admin.*, 568 F. App'x 422, 427 (6th Cir. 2014) (citing *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1030 (6th Cir. 1990)); *see also Swanson v. Berryhill*, No. 6:17-183-DCR, 2018 WL 813579, at *4 (E.D. Ky. Feb. 9, 2018) (finding that the plaintiff's statements about his daily activities "undermine his assertions that he is disabled");

In sum, substantial evidence supports the ALJ's detailed reasons for discounting portions of Dr. Ulrich's opinions. *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 690 (6th Cir. 2007) ("The ALJ did not summarily dismiss [the doctor's] opinion. Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence. This is all that we require when reviewing an administrative law judge decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement."); *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir. 2006) (stating that "this court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are

supported by sufficient clinical findings and are consistent with the evidence"); 20 C.F.R. §§ 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")

Plaintiff, relying solely on argument, has provided no record evidence to the contrary. Moreover, the Court would be required to defer to the findings at issue here even if Plaintiff had identified substantial evidence supporting an opposite conclusion. *Blakley*, 581 F.3d at 406; *cf. Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) ("The ALJ retains a 'zone of choice' in deciding whether to credit conflicting evidence."). For these reasons, the Court   finds that the ALJ did not err in his consideration of Dr. Ulrich's opinion.

### 2.  The RFC

Plaintiff contends that there is no support for the ALJ's conclusion that she can meet the requirements for light work.   Specifically, Plaintiff argues that the ALJ fails to specify in the RFC any weight that she can lift and that the findings of both Dr. Weaver and Dr. Ulrich demonstrate that she cannot perform light work.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in

functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he set forth in

the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence
> supports each conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the
> adjudicator must discuss the individual's ability to perform sustained work activities in
> an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5
> days a week, or an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the evidence available
> in the case record. The adjudicator must also explain how any material inconsistencies
> or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

"While an ALJ must consider and weigh medical opinions, the RFC determination is

expressly reserved to the Commissioner." *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733,

753 (N.D. Ohio Sept. 10, 2013) (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th

Cir. 2004)). Indeed, "there is no legal requirement for an ALJ to explain each limitation or

restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's

opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-

2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x at

198.)

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate her

impairments cause functional limitations resulting in disability. 20 C.F.R. § 404.1512(c). Where

the ALJ has properly considered Plaintiff's evidence and substantial evidence supports the ALJ's

conclusion, "this Court will defer to that finding even if there is substantial evidence in the

record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

As an initial matter, the applicable regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); 416.967(b). Nevertheless, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* In addition, Social Security Ruling 83-10 provides, *inter alia*, that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Here, the ALJ determined that Plaintiff could stand and/or walk for four hours out of an eight-hour workday and occasionally push and/or pull with her right leg. (R. at 26.) *See* 20 C.F.R. § 404.1567(b); 416.967(b)[1]; SSR 83-10.

Plaintiff first argues that she was unable to satisfy the lifting requirements for light work and that the ALJ failed to incorporate this limitation into the RFC. (ECF No. 12 at 14.)   In support of this argument, Plaintiff cites to the opinions of both Dr. Weaver and Dr. Ulrich. Dr. Weaver's opinion, however, indicated only that Plaintiff "would probably be limited in

---

[1] 20 C.F.R. § 416.967, titled Physical exertion requirements, provides in section (b):
(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Koster v. Comm'r of Soc. Sec.,* 643 F. App'x 466, 477 (6th Cir. 2016).

performance of physical activities involving … lifting ….” (R. at 456.) Dr. Ulrich opined that Plaintiff could lift and/or carry less than ten pounds both occasionally and frequently. (R. at 561.)

The ALJ specifically considered and found no support in the record for any lifting limitations based on these opinions, beyond those contained in the definition of “light work.” (R. at 26.) In doing so, the ALJ noted that Plaintiff “alleged no issues or impairment with her arms or hands and used them to adequately perform self-care, meal preparation, and other routine activities of daily living” (R. at 36). The ALJ further explained that the clinical testing did not reveal any deficits in Plaintiff’s use of her arms and hands. (R. at 30.) Further, the ALJ noted that Plaintiff “did not evidence any upper extremity condition and did not routinely report cervical spine pain/upper extremity radicular symptoms.” (R. at 37.) As discussed above, the ALJ’s conclusion on this issue enjoys substantial support in the record. Importantly, Plaintiff has pointed to no evidence demonstrating otherwise.

Plaintiff also contends that the RFC is internally inconsistent because the ALJ’s conclusion that she could only stand/walk for four hours out of an eight-hour workday precludes her ability to do light work. However, courts, including the Sixth Circuit Court of Appeals, have recognized that light work could include less than six hours of walking/standing. *See, e.g., Barron-Green v. Comm’r of Soc. Sec.*, No. 1:18 CV 1705, 2019 WL 4194142, at *7 (N.D. Ohio Sept. 4, 2019) (rejecting argument that a limitations to standing and walking for two hours out of an eight-hour workday and sitting for six hours out of an eight-hour workday are incompatible with light work as a matter of law); *Icke v. Comm’r of Soc. Sec*., No. 1:16-CV-01208, 2017 WL 2426246, at *5 (N.D. Ohio May 16, 2017), *report and recommendation adopted*, No. 1:16 CV 1208, 2017 WL 2418729 (N.D. Ohio June 2, 2017) (“a plain reading of the definition of light

work provides for a possibility that standing/walking could occur for less than 6–hours in an 8–hour workday"); *Blankenship v. Comm'r of Soc.l Sec.*, 624 F. App'x 419, 428 (6th Cir. 2015) (finding that a two-hour stand/walk requirement is not incompatible with light work). Plaintiff also asserts that this four-hour limitation is inconsistent with the opinions of Dr. Ulrich and Dr. Weaver but fails to explain how this is so. Dr. Weaver only opined generally that Plaintiff would be limited as to sustained sitting/standing. (R. at 456.) Further, Dr. Ulrich opined that Plaintiff would need to periodically alternate sitting and standing every 15 minutes to prevent pain. (R. at 561.)

Plaintiff also contends that, in formulating the RFC, the ALJ "completely ignore[d] the fact that she's required to use a hand-held assistive device, *i.e.*, a cane." (ECF No. 12 at 15.) This is simply an inaccurate characterization of the ALJ's opinion. The ALJ more than once noted Plaintiff's use of a cane but concluded that its use was not supported by the medical evidence. Although the Plaintiff stated that she used a cane because it was prescribed by her doctor (R. at 27, 34), the ALJ noted that Plaintiff's medical records did not indicate her routine use of such a device. (R. at 34). The record provides substantial support for the ALJ's conclusion on this issue. Indeed, on several occasions Plaintiff was observed to have a normal gait without the cane. (R. at 394, 453, 478.) Dr. Weaver's opinion specifically notes that Plaintiff did not use a cane, crutches, or a walker. (R. at 453). Moreover, contrary to Plaintiff's representation, Dr. Ulrich did not opine on his assessment form that she required a hand-held assistive device for ambulation, but merely noted in the margin that she uses a cart when shopping. (R. at 561.)

For the reasons previously discussed in connection with Plaintiff's challenge to the ALJ's consideration of Dr. Ulrich's opinion, substantial evidence supports the ALJ's RFC assessment

and the Court must defer to it.   *Longworth*, 402 F.3d at 595.   While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his determination, and his determination enjoys substantial support in the record. *Schmiedebusch*, 536 F. App'x at 649; *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")

In connection with her argument that the RFC is not supported by substantial evidence, Plaintiff raises three additional issues.   First, she argues that the ALJ ignored the impact of her obesity.   Further, she contends that the ALJ ignored her subjective complaints and failed to take into consideration the side effects of her medications.   These arguments are conclusory and undeveloped.   They are comprised of, at most, a reiteration of the applicable standards.   The Court concludes on one hand, therefore, that Plaintiff has waived these claims. *See, e.g., United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2014) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . . put flesh on its bones"); *Moore v. Commissioner of Social Security*, 573 Fed. Appx. 540, 543 (6th Cir., Aug. 5, 2014) (citing *Stewart* with approval to find an undeveloped argument waived).

On the other hand, waiver aside, Plaintiff's assertions represent a wholly inaccurate characterization of the ALJ's decision.   For example, with respect to Plaintiff's obesity, the ALJ specifically noted that neither Plaintiff nor her attorney argued that she "experienced any specific physical limitations resulting from her body habitus."   (R. at 28.)   Despite this, the

ALJ stated that he "appropriately considered [Plaintiff's] body habitus in accordance with SSR 02-02p when limiting her to the reduced range of light work with limited standing/walking, as well as [with] postural and environmental limits." (*Id.*) Plaintiff has provided no evidence to the contrary.

Similarly, the ALJ did not disregard Plaintiff's subjective complaints. Rather, he noted that Plaintiff testified to "incapacitating discomfort" and "associated functional limitations" in contrast to the limitations set forth in the RFC. (R. at 32.) He then explained that there was a lack of objective medical and other evidence to support the severity of her subjective complaints. (R. at 33.) He then detailed specific inconsistencies. (R. at 33-35.) By way of example only, he noted reports that Plaintiff quit working to be a stay at home mom (R. at 33 citing R. at 317, 405); he cited a report that she was searching for employment while also reporting that she was unable to engage in work-related activities (*Id*. citing R. at 558); he noted that her daily activities were not so restricted as to preclude light work (R. at 33-34 citing Testimony and R. at 405, 515), and he discussed instances of non-compliance (R. at 35 citing R. at 398, 488, 490, 491, 517, 585, 632, 633, 638, 649.) Thus, the ALJ reasonably assessed Plaintiff's subjective complaints when formulating the RFC.

To the extent that Plaintiff argues otherwise, the Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:[2]

---

[2]An ALJ's consideration of a claimant's statements about symptoms and limitations, generally known as a credibility analysis, is required. But, as clarified by SSR 16-3p (applicable as of March 28, 2016), the focus is not on the claimant's propensity for truthfulness or character but rather on the consistency of his statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2, *6, *11. Consequently, the Court uses the term "credibility" in the context of assessing the consistency of Plaintiff's statements about her symptoms with the evidence in the record.

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d 525, 531 (6th Cir. 1997). Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06-CV-1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently

specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

As noted above, with respect to Plaintiff's credibility, the ALJ reached his decision by considering Plaintiff's physical examinations; her testimony regarding her physical capabilities and activities of daily living; and inconsistencies in the record which he reasonably explained. (R. at 33-35.)   Accordingly, his evaluation was consistent with the regulations. *See* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you.")

Finally, the ALJ did not ignore Plaintiff's alleged side effects from her medication. Rather, the ALJ specifically addressed them stating that, despite Plaintiff's report of side effects during her hearing testimony, "the record was devoid of any routine/consistent reports of medicinal side effects made to medical providers."   (R. at 33.)   Plaintiff has pointed to no contrary evidence.

To the extent Plaintiff challenges the ALJ's assessment of the record, the Sixth Circuit has repeatedly held that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (internal quotations omitted).

In sum, for all of the above reasons, substantial evidence supports the ALJ's formulation of Plaintiff's RFC. Accordingly, this contention of error is overruled**.**

## B. The Hypothetical Question Posed to the Vocational Expert

Finally, Plaintiff succinctly contends that the initial hypothetical directed to the VE inaccurately portrayed her impairments to the extent that it stated that she could stand and walk for four hours out of an eight-hour workday and frequently balance and kneel.   (ECF No. 12 at 17-18.)   Plaintiff contends that these limitations are directly contradicted by the opinions of Drs. Weaver and Ulrich.   (*Id*. at 18.)   By extension, Plaintiff contends that the ALJ's conclusion that there are jobs available in significant numbers in the economy that she can perform is not supported by substantial evidence.   (*Id.*)

"In the Sixth Circuit, a VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments." *Mitchell v. Comm'r of Soc. Sec.*, No. 13-cv-01969, 2014 WL 3738270, at *11 (N.D. Ohio July 29, 2014) (citing *Parley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *10 (N.D. Ohio June 8, 2017) ("Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments.") (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005)), *adopted by* 2017 WL 2720332

(N.D. Ohio June 23, 2017). Nevertheless, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)). Accordingly, it is "well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact" into a hypothetical question. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 250 (6th Cir. 2016) (finding ALJ's hypothetical questions to the vocational expert "fairly portrayed" the claimant's limitations as supported by the objective evidence and that "the ALJ was under no obligation to include" limitations that he found not credible in such hypotheticals); *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016) (rejecting contention that the ALJ erred by relying on VE testimony given in response to hypothetical that did not incorporate all of claimant's limitations "because the ALJ's hypothetical question incorporated all of the functional limitations that he found to be credible").

As discussed at length above, the ALJ adequately explained why he did not fully accept Plaintiff's limitations as to walking/standing. (R. at 30-39.) As to Plaintiff's contention that the ALJ also erred in concluding that she could frequently balance and kneel, the ALJ noted that there was no evidence of routine lower extremity instability. (R. at 37.) Further, he explained that her activities of daily living and her inconsistent use of an assistive device also indicated greater ability to balance and kneel than opined by Dr. Ulrich. (*Id*.) The ALJ's view is supported by substantial evidence in the record. Specifically, Dr. Weaver did not opine as to any limitations regarding Plaintiff's ability to kneel or balance. (R. at 456.) Moreover, Dr.

Weaver's findings indicated that Plaintiff exhibited normal range of motion with respect to her hips, knees and ankles.   (R. 459-460.)   Again, Plaintiff has failed to offer anything to the contrary beyond argument.

Accordingly, it would not be error for the ALJ to decline to incorporate those limitations into the resulting residual functional capacity or the corresponding hypothetical questions.   As explained above, hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible.   *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865, 2011 WL 867214, *9 (6th Cir. 2011).   Moreover, the ALJ was entitled to rely on the vocational expert's testimony, since it was based on a residual functional capacity that was based on substantial evidence.   *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010); *Parrish*, 2017 WL 2728394, at *10. For these reasons, the Court finds no merit to Plaintiff's argument on this issue.

## VII.   CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors is therefore **OVERRULED** and the Commissioner's decision is **AFFIRMED.** The Clerk is **DIRECTED** to enter **FINAL JUDGMENT.**

**IT IS SO ORDERED.**

Date:   March 12, 2021                     _/s/ Elizabeth A. Preston Deavers_____
                                             Elizabeth A. Preston Deavers
                                             United States Magistrate Judge